In the Matter of JOSEPH MORRIS, Petitioner, v NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE et al., Respondents.

Third Department, October 22, 1992

### APPEARANCES OF COUNSEL

*Simon, Uncyk & Borenkind (Eli Uncyk* of counsel), New York City, for petitioner.

*Robert Abrams, Attorney-General (Lew A. Millenbach* of counsel), Albany, for New York State Department of Taxation and Finance, respondent.

### OPINION OF THE COURT

CREW III, J.

Petitioner is the president of Sunshine Developers Inc., a Delaware corporation formed to purchase, own and operate boats. Petitioner's brother, Robert Morris (hereinafter Morris), and Morris' son, Drew, are Sunshine's only shareholders and Morris acts as Sunshine's secretary-treasurer. Sunshine's corporate offices are located in New Jersey. In April 1985, respondent New York State Department of Taxation and Finance (hereinafter the Department) issued a notice of determination and demand for payment of sales and use taxes due in the amount of $76,390, plus interest and penalties, to petitioner, Morris and Sunshine. The tax assessed represented a compensating use tax imposed upon Sunshine's purchase of two boats, a 50-foot Hatteras Convertible purchased in June 1981 and a 60-foot Hatteras Convertible purchased in June 1984, from a dealer in New York.

Petitioner, Morris and Sunshine challenged this determination claiming that no tax was due because Sunshine was a nonresident corporation. The matter was placed before an Administrative Law Judge (hereinafter ALJ) who, following a hearing, determined that Sunshine was entitled to the nonresident exemption set forth in Tax Law § 1118 (2) and, further, that the corporate veil should not be pierced to impose personal liability upon petitioner and/or Morris. The Department filed a notice of exception with respondent Tax Appeals Tribunal. Following oral argument, the Tribunal, *inter alia,* reversed the ALJ's determination, granted the Department's exception and granted the petition of Sunshine and Morris by finding them not liable for the tax imposed. Petitioner's petition was denied but the notice of determination issued to

him was modified to reflect a credit in the amount of $19,470, representing sales and use tax paid on the 50-foot Hatteras Convertible in New Jersey. Petitioner thereafter commenced this CPLR article 78 proceeding seeking review of the Tribunal's determination.

Petitioner argues on review that the Tribunal erred in piercing the corporate veil and concluding that he was an equitable owner of the corporation, and, hence, personally liable for the tax due, denying him the nonresident exemption contained in Tax Law § 1118 (2) and refusing to abate the penalty. These arguments will be addressed seriatim.

It is well settled that corporations are generally regarded as independent legal entities having an existence "separate and distinct from that of their shareholders" (Billy v Consolidated Mach. Tool Corp., 51 NY2d 152, 163; see, Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 656) and, further, that one may lawfully incorporate a business for the very purpose of avoiding personal liability (see, Walkovszky v Carlton, 18 NY2d 414, 417; Bowles v Errico, 163 AD2d 771, 773). Although generally reluctant to do so, New York courts are permitted to pierce the corporate veil in order "to prevent fraud or to achieve equity" (International Aircraft Trading Co. v Manufacturers Trust Co., 297 NY 285, 292), particularly in instances where the corporation is in reality a shell or dummy corporation controlled by an individual for his or her own purposes (see, Port Chester Elec. Constr. Corp. v Atlas, supra, at 656-657; 888 7th Ave. Assocs. Ltd. Partnership v Arlen Corp., 172 AD2d 445).

Here, Sunshine's corporate tax returns indicate that Sunshine was inactive and not engaged in any type of business from 1981 through 1983; although various deductions were taken on the 1984 return, no income was reported. Additionally, petitioner candidly testified that Sunshine was "just a shell corporation" and Morris stated that he did not believe that Sunshine had ever conducted any type of business. Morris also testified that there were very few board of directors' meetings and no meeting minutes were taken. Moreover, neither petitioner nor Morris could recall the details of Sunshine's incorporation, where the corporation had its bank account or the name of the carrier supplying the marine insurance on the boats. In view of the foregoing, we conclude that there is ample evidence to support the Tribunal's determination that Sunshine was nothing more than a "dummy" corporation.

As for the Tribunal's decision to pierce the corporate veil, impute equitable ownership to petitioner and hold him liable for the tax assessed, it is well established that a controlling shareholder may be held responsible for the corporation's obligations "where [the] corporation is being operated by [that] individual in such a manner as to render the corporate form a fiction" *(Canario v Lidelco, Inc.,* 782 F Supp 749, 759; *see, Passalacqua Bldrs. v Resnick Developers,* 933 F2d 131, 138-139; *Billy v Consolidated Mach. Tool Corp., supra,* at 162-163; *Chase Manhattan Bank v 264 Water St. Assocs.,* 174 AD2d 504, 505; *Rothermel v Ermiger,* 161 AD2d 1016, 1017; *Bonanni v Straight Arrow Publs.,* 133 AD2d 585, 587). Here, however, we are confronted with the issue of whether a nonshareholder may be held liable on an "alter ego" theory, which issue has not been definitively addressed by the courts of this State *(see, Establissement Tomis v Shearson Hayden Stone,* 459 F Supp 1355, 1366, n 13). Bearing in mind, however, that the corporate veil may be pierced to achieve equity *(see, Walkovszky v Carlton,* 18 NY2d 414, 417, *supra),* we perceive that we should be concerned with "reality and not form [and] with how the corporation operated and [petitioner's] relationship to that operation" *(Dewitt Truck Brokers v Flemming Fruit Co.,* 540 F2d 681, 685).

With that in mind, we conclude that there is substantial evidence to support the Tribunal's decision to impute equitable ownership, and the resulting liability for the tax assessed, to petitioner. The record reveals that Morris knew very little about Sunshine's operations and the acquisition of the two boats at issue, and petitioner was the only board member present at the "special meeting" at which the purchase of the 50-foot Hatteras Convertible was approved. Additionally, petitioner took delivery of both boats in North Carolina, entered into dock leases for the boats, is listed as the owner of the 50-foot Hatteras Convertible on a Coast Guard registration form, used at least one of the boats for personal entertaining and wrote a personal check to pay the New Jersey tax liability assessed on the 50-foot Hatteras Convertible. Thus, while it is true that the mere fact that a corporation's management is controlled by a particular officer or controlling shareholder is an insufficient ground for piercing the corporate veil and imposing personal liability *(Matter of Gifford,* 144 AD2d 742, 744), given the particular facts presented here the Tribunal's determination in this regard is fully supported by the record.

Turning to the issue of the nonresident exemption, Tax Law

§ 1118 (2) exempts from compensating use tax "property purchased by the user while a nonresident of this state". Although Tax Law § 1101 does not contain a definition of "resident", the applicable Department regulations define a resident as "[a]ny individual who maintains a permanent place of abode" (20 NYCRR 526.15 [a] [1]). "Permanent place of abode", in turn, is defined as "a dwelling place *maintained* by a person * * * on other than a temporary or transient basis" and includes, *inter alia,* an apartment (20 NYCRR 526.15 [a] [2] [emphasis supplied]).

The Tribunal concluded that petitioner did not qualify for the nonresident exemption because he maintained an apartment in New York at the time the boats were purchased in 1981 and 1984. Petitioner concedes that he maintained the New York apartment in 1981, and he has failed to establish that he terminated his lease prior to the purchase of the 60-foot Hatteras Convertible in 1984. Petitioner contends, however, that he only used this apartment "once in a blue moon" and submitted a driver's license, voter's registration card, rent checks and utility bills to demonstrate that he had lived in New Jersey since 1980. Petitioner's contentions notwithstanding, a review of the relevant regulation reveals that it is the nature of the rental, not the use, that determines residency *(see,* 20 NYCRR 526.15). Thus, although petitioner may have *used* the New York apartment on a transient basis, he *maintained* it during the relevant periods on other than a transient basis and, hence, the Tribunal's denial of the exemption upon this basis was entirely proper. Finally, we find the remaining arguments advanced by petitioner unpersuasive, including his plea for abatement of the penalties assessed.

MIKOLL, J. P., YESAWICH JR., MERCURE and CASEY, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.